GILES N. LANGDON *vs.* HORACE H. STRONG AND OTHERS.

A woman having been seriously injured by an ox belonging to the defendants which was at large in a public street, was carried to the house of Mrs. *B*, with whom she lodged, and the plaintiff, a physician, was sent for and at once visited her. Shortly after on the same day one of the defendants called and asked Mrs. *B* if they had procured a doctor yet. She replied, "Yes, Dr. *L*." He then said "Keep right on with him and our firm will pay the expenses." This was on the same day communicated by Mrs. *B* to the plaintiff, who, relying upon the promise so made, attended on the patient and thenceforth charged his services to the defendants. Soon after the above conversation, in reply to a note from the plaintiff stating her need of medicines, the defendants wrote him "Mark all prescriptions with our name and send them to Dr. *W* to be filled." Held that the plaintiff had legally charged his services to the defendants.

ASSUMPSIT, for services as a physician; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue before *Robinson, J.* The court found the following facts:

The defendants were owners of a steer, which, on the 20th day of August, 1874, attacked Mrs. Hendrickson, an old lady, in the street, and seriously injured her. She was taken insensible to the house of Mrs. Bienviennieu, where she had a lodging. On the same day the plaintiff, a physician, was called and attended her, but not at this time by the defendants' order. Afterwards, on the same day, one of the defendants called at the house where the old lady lay, and stated to Mrs. Bienviennieu, in the presence of others, that he belonged to the defendant firm, and asked her if she had got a doctor yet. Mrs. Bienviennieu said "Yes, Dr. Langdon." He then said, "Is he capable of setting bones?" Mrs. Bienviennieu said she thought he was, but added, " If he is not satisfactory to you we will get some one else." He replied, "If he is satisfactory to you he is satisfactory to us; keep right on with the doctor, and our firm will pay all expenses." This was afterwards, on the same day, communicated to the plaintiff by Mrs. Bienviennieu and the others who heard it. The plaintiff, relying on these remarks so communicated to him, thenceforth charged his services to the defendants. On the 24th of August the plaintiff wrote to the defendants the following letter:

"New Haven, Aug. 24th, 1874.
"Messrs. STRONG, BARNES, HART & CO.,

"Gent.—The old colored lady, Aunt Betsey Hendrickson, who was injured by your wild ox, is not so well to-day. She must have medicine, &c., to supply her necessities, and the persons in charge desire you to call to-day, (if you have not,) and aid them, that what is humane may be done in her case.

Respectfully, GILES N. LANGDON, M. D.,
Attending Physician and Surgeon."

The defendants replied as follows:

"DR. LANGDON,—Dear Sir: Mark all prescriptions for Mrs. Hendrickson, " Strong, Barnes, Hart & Company," and send them to Dr. Whittlesey to be filled.

STRONG, BARNES, HART & CO."

The plaintiff complied with this request. No other intercourse took place between the plaintiff and defendants than

as above, until the plaintiff sent them his bill. The plaintiff was informed previous to so sending his bill, but after his services had been rendered, that the defendants had put into the hands of a third person, not Mrs. Bienviennieu, the sum of fifty dollars to pay the expenses of Mrs. Hendrickson, including medical attendance.

The plaintiff's bill was $152, for forty-six visits, not including the charge for his attendance the first day.

Upon these facts the plaintiff claimed that he had been employed by the defendants to render the services, especially after August 24th, and that a suit could be maintained by him directly against the defendants; but the court overruled this claim and rendered judgment for the defendants.

The plaintiff moved for a new trial.

*Newton* and *Arvine*, in support of the motion.

1. The question of the liability of the defendants in this case is a question of law. It is a question of the construction of the contract contained in the words and acts of the defendants. *Gulick* v. *Grover*, 33 N. Jer. Law, 463; *Durst* v. *Burton*, 2 Lansing, 137; *S. C.*, 47 N. York, 167; Starkie Ev., 684, 685, 697, 699.

2. By a just and equitable construction of the contract it was a contract with the plaintiff, Mrs. B. being merely the messenger to communicate it to him, or the agent to employ him. The presumption would be that the defendants were to pay the plaintiff and not Mrs. B. Story on Agency, §§ 74, 82. It cannot be supposed, in the absence of any express terms to that effect, that the defendants intended that she should be responsible to the plaintiff and look to them to reim- burse her. The plaintiff's bill might be too large, and if the court below was right, she must pay it and run the risk of collecting from the defendants, or must settle the matter by a litigation with the plaintiff, and then perhaps have a second suit with the defendants. Besides, if this was a contract with Mrs. B., what was the consideration? She was not injured. She had no interest in the matter, and if there could be any consideration it would be purely technical. The only natural

and equitable contract, the only one having a substantial consideration, would be one with the plaintiff. The letter, and the notice from the defendants to the plaintiff, before he had sent in his bill, that there was a sum in the hands of a third party to pay him, that third party not being Mrs. B., are further evidence of an intention to contract with the plaintiff.

3. If Mrs. B. was not the agent of the defendants, still there was a privity of contract between the plaintiff and the defendants. The promise of the defendants was made and intended for the benefit of the plaintiff. It is now settled that when a promise is made to one man for the benefit of another, the latter may sustain a suit upon that promise. *Steene* v. *Aylesworth,* 18 Conn., 252; *Crocker* v. *Higgins,* 7 id., 347; *Thorp* v. *Keokuk Coal Co.,* 48 N. York, 257; *Arnold* v. *Lyman,* 17 Mass., 400; *Cabot* v. *Haskins,* 3 Pick., 91; *Hinkley* v. *Fowler,* 15 Maine, 285; *Todd* v. *Toby,* 29 id., 224; *Pigott* v. *Thompson,* 3 Bos. & Pul., 149; *Bell* v. *Chaplain,* Hardr., 321.

4. If Mrs. B. was not under the contract the agent of the defendants, their letter and the notice sent him as to the $50, were ratifications of the agency she assumed. Story on Agency, §§ 45, 54.

*Pickett,* contra.

1. The communication by one of the defendants to Mrs. Bienviennieu, when made known to the plaintiff, did not create either an express or implied contract between the defendants and the plaintiff. Story on Agency, § 87. It only gave her authority to procure a physician and charge the expense to the defendants. It gave her no power to authorize others to collect expenses from the defendants. *Shankland* v. *Corporation of Washington,* 5 Peters, 390, 396; *Thompson* v. *Stewart,* 3 Conn., 183.

2. The plaintiff having, without inquiry as to her powers, dealt with Mrs. B., who was not held out as the general agent of the defendants, trusted to her good faith and responsibility, and not to that of the defendants. Story on Agency, § 133; *Snow* v. *Perry,* 9 Pick., 539, 542; *Lobdell* v. *Baker,* 1 Met., 202; *Towle* v. *Leviatt,* 23 N. Hamp., 373.

3. Ratification of agency is a question of intention, and therefore a question of fact; and as such it has been passed upon by the court below. *Seeley* v. *North*, 16 Conn., 97.

4. The plaintiff had not such legal interest in the contract with the defendants as gave him a right of action against them. *Crampton* v. *Admr. of Ballard*, 10 Verm., 251, 253; *Commercial Bank* v. *French*, 21 Pick., 489; *Sanford* v. *Nichols*, 14 Conn., 324, 327; *Treat* v. *Stanton*, id., 445, 452.

FOSTER, J. The injuries done by the defendants' ox, to the person of Mrs. Hendrickson, appear to have been of a serious character, and the defendants, from the beginning, seem to have considered themselves responsible for those injuries. It was just and natural that they should do so; and the evidence, both oral and written, fully justified the plaintiff in making his charges for services rendered as physician and surgeon, as he did, directly to the defendants. The plaintiff's claim is meritorious, and ought to be paid. The defence is technical in its character, and is entitled to no more favor than is demanded by well settled rules of law. The facts found abundantly sustain the claims of the plaintiff's counsel as to the law, and the overruling of those claims furnishes sufficient ground for a new trial.

The motion for a new trial is therefore granted.

In this opinion the other judges concurred; except PHELPS, J., who did not sit.